State *vs.* Whaley,

HEARD NOVEMBER TERM, 1878.

## STATE *vs.* WHALEY.

Where two slaves contracted in form the relation of husband and wife before emancipation, and were living together at the time of the passage of the Act of 1865, they must be regarded in law as husband and wife.

Where a party has contracted a valid marriage and then marries a second time, his cohabitation and acknowledgment of the marriage relation between him and the second wife is not evidence of the validity of the second marriage.

BEFORE SHAW, J., AT RICHLAND, APRIL TERM, 1878.

This was an indictment for bigamy against Nathan Whaley for marrying one Charity Collins when Betsy Moore, alleged to be the wife of the defendant, was still living.

The evidence was to the effect that the defendant, a man of color, was a slave, and that some time before emancipation took place he went through the form of marriage with one Pleasants, also a slave; that they cohabited together as husband and wife from the time of their marriage until emancipation and had children, and that for a year or eighteen months thereafter they still cohabited as man and wife; that during the life of Pleasants he married one Betsy Moore, but that after the death of Pleasants, and in August, 1873, he married Charity Collins.

His Honor the presiding Judge instructed the jury as follows:

1. "That the marriage between defendant and Pleasants whilst slaves, however formally celebrated *in faciœ ecclesiœ*, was legally invalid, and that mere cohabitation after their emancipation would not, without proof of recognition on their part of the marital relation, validate the prior invalid marriage.

2. "That the legal marriage between defendant and Pleasants being once established it continued until her death, (there being no allegation of divorce,) and that the marriage of defendant with Betsy during the lifetime of Pleasants was invalid.

3. "But assuming Pleasants to have been his legal wife, if, after her death, defendant acknowledged the second marriage to Betsy, and recognized her as his legal wife, that this, at common law, would constitute such a marriage as would make the third marriage to Charity bigamous.

4. "That if Pleasants was not his legal wife, defendant's marriage to Betsy (if proved to the satisfaction of the jury) was a valid one,

and any marriage he may have subsequently contracted with Charity, in the lifetime of Betsy, was bigamous."

The defendant excepted to the charge.

The jury, thereupon, on the 7th day of April, 1878, found the defendant guilty, and he appealed.

*Pope & Haskell*, for appellant.

*Abney*, Solicitor, *Muller*, contra.

March 3, 1879. The opinion of the Court was delivered by

WILLARD, C. J. The defendant was convicted upon an indictment for bigamy, alleging that "he feloniously did marry one Charity Collins, the said Betsy Moore, his former wife, being then alive." To establish the offense, it was necessary to prove that defendant had been previously married to Betsy Moore. To resist this, conclusive proof was offered to show that previous to the alleged marriage with Betsy Moore the defendant was lawfully married to a woman by the name of Pleasants. It was in evidence that such marriage with Pleasants was celebrated in form while the parties were both slaves and with the consent of their respective masters. The Circuit Judge charged "that the marriage between defendant and Pleasants whilst slaves, however formally celebrated in *faciæ ecclesiæ*, was legally invalid, and that mere cohabitation after emancipation would not, without proof on their part of the marital relation, validate the prior invalid marriage." This charge is clearly inconsistent with the recent decision of this Court in *Davenport* vs. *Caldwell*, (10 S. C., p—.) The fact that at the date of the passage of the Act of 1865 (13 Stat., 290,) the defendant and Pleasants were living together as man and wife under a marriage solemnized while they were slaves, if established to the satisfaction of the jury, brought the case within the second Section of that Act.—*Davenport* vs. *Caldwell*. There was evidence that the defendant and Pleasants continued to live as man and wife after emancipation for a year or eighteen months. If the jury concluded from this testimony that they so lived for that length of time after the general emancipation of slaves, then they should have found the existence of a marriage. The charge precludes such a finding and was, therefore, erroneous. It is unnecessary to consider the question of the validity of the marriage with Pleasants independently

of the fact of cohabitation after the passage of the Act of 1865. As was intimated in *Davenport* vs. *Caldwell*, there are considerations connected with that question involving the validity of marriages in due form between slaves with the full consent of their owners, independently of the Act of 1865, but the Court did not feel called upon in that case to pass upon such question. Nor does the present case demand such an inquiry, as the fact of cohabitation after emancipation does not appear to have been contraverted.

The third charge was as follows: "But assuming Pleasants to have been his legal wife, if after her death defendant acknowledged the second marriage to Betsy and recognized her as his legal wife, that this at common law would constitute such marriage as would make the third marriage to Charity bigamous." Was this a proper direction to the jury? The law does not make the marriage contract, but it is altogether the act of the parties, the law merely declaring its consequences. The question is one of understanding and intent, having reference to a particular time when such intent was consummated by cohabitation. If the parties are legally competent to enter the marriage relation, then the law effectuates such consummated understanding and intent. If the parties are incompetent to contract marriage together, as when either is under the age of legal consent, or previously married, having a lawful husband or wife living, the marriage is invalid and cohabitation resulting therefrom illicit. Cohabitation having its origin in an illicit compact is presumed to continue in that character until changed by the lawful understanding and consent of the parties into the relation of marriage. The conduct of parties, such as their declarations and actual cohabitation, may be proved as evidence to infer the existence of the marriage contract. It is erroneous to say that such declarations, accompanied by cohabitation, make the contract; they are merely circumstances entitled to weight with all other circumstances properly bearing on the question, such weight to be admitted with due regard to the legal presumptions affecting the question. This part of the charge may readily have been construed as meaning that if after the death of Pleasants the defendant acknowledged the fact of having been married to Betsy Moore during the lifetime of Pleasants, that such an acknowledgment was entitled to be received as evidence of marriage. Such an inference would clearly be erroneous, as that marriage, assuming its original illegality, could not become the source of the legal relation of marriage through

any acknowledgment of the fact of its existence. Recognition of the marriage relation by the parties is generally accepted as ground for inferring a contract ·of marriage; but if the nature of that recognition is such that it points exclusively to an illegal transaction as the source from which that relation has sprung, it could not have the effect to change a state of illicit cohabitation into the legal state of marriage. The recognition must be of such a nature as to point to a contract of marriage at some time when the parties are able to contract. When such is the case a starting point of the new relation is found, material in the case where children are born of such cohabitation both before and after the time of such contracted marriage, as it regards questions of legitimacy. The principles on which the foregoing conclusion rest are so fully illustrated in the cases in this State that it is unnecessary to subject them to particular examination. They are: *State* vs. *Hilton,* 3 Rich. Eq., 434; *State* vs. *Barefoot,* 2 Rich., 209; *Fryer* vs. *Fryer,* Rich. Eq. Ca., 85; and *State* vs. *Mangwood,* Rich. Eq. Ca., 113.

The judgment must be set aside and a new trial granted.

*McIver,* A. J., concurred.